UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GREGORY VIOLA, | : | CIVIL ACTION NO. |
|     Petitioner, | : | 3:15-CV-01398 (VLB) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | April 26, 2016 |

**MEMORANDUM OF DECISION DENYING PETITIONER'S MOTIONS FOR DISCOVERY AND AN ORDER TO SHOW CAUSE [Dkt. ## 11, 18, 19, 30-32]**

Petitioner, Gregory Viola ("Viola"), moves this Court to order the production of a host of discovery in support of his habeas petition and to issue an order to show cause. For the reasons that follow, the Petitioner's motions are DENIED.

**I. Background**

On February 1, 2012, Viola pled guilty to two counts of mail fraud, in violation of 18 U.S.C. § 1341. [Dkt. #1, Pet'r's Mot. to Vacate at 1]. He was sentenced on October 4, 2012. [*Id.*]. Viola appealed his sentence, which was affirmed by the Second Circuit on February 10, 2014. [*Id.* at 2]. Following the denial of his appeal, on November 17, 2014, Viola filed a petition for certiorari, which was also denied. [*Id.*]. On January 29, 2015, Viola filed the first of several motions for a new trial, all of which were denied. [*Id.* at 2-3]. The denials were upheld on appeal. *See U.S. v. Viola*, No. 3:12-cr-00025 (D. Conn. filed Aug. 11, 2011) (Dkt. # 102).

On September 22, 2015, Viola filed the instant motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. *See* [Dkt. #1, Pet'r's Mot. to Vacate]. In it, Viola raises several grounds for relief: ineffective assistance of counsel, violations of his right to procedural due process, and violations of his

1

Sixth Amendment rights.  See [*id*. at 5-9].  In connection with his motion, Viola now moves for an order requiring the production of "[a]ll e-mails, text messages, [and] written correspondence" relating to his criminal prosecution, as well as all "phone records relating to calls involving the defendant" from each of the attorneys who represented him in the course of this case and from one of the government attorneys who prosecuted him, spanning the period of July 8, 2011 to the present time.  [Dkt. #11, Pet'r's Mot. for Disc. at 1-2].  In support of his request, Viola contends that each of his attorneys was, for different reasons, ineffective, and that one of his attorneys, James H. Pickerstein, conspired with the Government to secure his conviction.  [*Id*. at 2; Dkt. #1, Pet'r's Mot. to Vacate at 38-39].  Specifically, Viola contends that he originally hired Pickerstein, who "hand-picked" the government attorney assigned to the case to prosecute him because Pickerstein believed Viola would be able to pay a large fee in exchange for a favorable outcome.  [Dkt. #1, Pet'r's Mot. to Vacate at 38].[1]  When Pickerstein determined that Viola could no longer afford to pay his fees, Viola maintains that Pickerstein failed to properly defend him.  [*Id*.].  Viola bases his theory on the fact that Mr. Pickerstein pled guilty in federal court to one count of mail fraud in connection with the theft of over $600,000 from his clients' trust accounts.  [Dkt. #18, Pet'r's Mot. to Amend and Supplement, at 1].  Accordingly, Viola also seeks the docket sheet and "all the discovery provided" in connection with

---

[1] Since 2007, and at all times during the investigation and criminal proceedings, Viola was unemployed, and his sole source of income was approximately $6,000 in monthly disability benefits.  See *U.S. v. Viola*, No. 3:12-cr-00025 (D. Conn. filed Aug. 11, 2011) (Dkt. #57 at ¶ 74).  In addition, prior to going on disability, Viola was sporadically employed, including a ten year period of unemployment, between 1979 and 1989, and he incurred significant gambling losses.  *Id*. (Dkt. #57 at ¶¶ 76-77, 80).

2

Pickerstein's guilty plea. [*Id*.].  Finally, Viola moves for an order to show cause as to the appointment of Mr. Pickerstein as CJA counsel for his case.  [Dkt. #19, Pet'r's Mot. for Order to Show Cause at 1].  Viola alleges that he met with Pickerstein for a free consultation prior to Pickerstein's appointment, that he could not afford Pickerstein's services, and that Pickerstein was then appointed as CJA counsel.  [*Id*.].[2]

As for his other attorneys, Viola maintains that Attorney Green failed to negotiate a fair and reasonable plea agreement and that he and the Government assured him that he would receive a reasonable sentence, which Viola believed would be no more than 24 months.  [Dkt. #1, Pet'r's Mot. to Vacate at 21].  He further contends that Attorney Woo ignored favorable evidence and spoke harshly during client meetings.  [*Id*. at 39-42].  Viola does not make any specific allegations against Attorney Einhorn, from whom he also seeks discovery.

## II. Legal Standard and Analysis

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009).  Instead, Rule 6(a) of the Rules Governing Section 2255 Cases

---

[2] On August 11, 2011, Viola was arrested and entered his initial appearance. *See U.S. v. Viola*, No. 3:12-cr-00025 (D. Conn. filed Aug. 11, 2011) (Dkt. #5).  That same day, attorney Calvin Woo was appointed to serve as Viola's CJA counsel. *Id*. (Dkt. #22).  On or around February 1, 2012, Pickerstein sought, and the Court granted, Pickerstein admission under the CJA to represent Viola for the limited purpose of his plea canvass. *Id*. (Dkt. ## 27, 41).  On April 11, 2012, Attorney Woo filed a motion seeking the appointment of Pickerstein as co-counsel due to the complexity of the case. *Id*. (Dkt. #39).  On April 19, 2012, the Court denied the motion, reiterating the limited purpose of Pickerstein's prior appointment, concluding that the case did "not involve complex legal matters," and terminating Pickerstein's appointment. *Id*. (Dkt. #41).

provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." 28 U.S.C. § 2255 Rule 6(a). A petitioner satisfies this "good cause" standard when "'specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). "Otherwise, where a petitioner's allegations do not establish a *prima facie* case for relief, discovery need not be ordered." *Capalbo v. United States*, Nos. 10 Civ. 2563 (RJH) (JLC), 02 Cr. 1237 (RJH), 2012 WL 611539, at *2 (S.D.N.Y. Feb. 24, 2012) (citing *Evans v. Miller*, No. 04 Civ. 9494(DAB) (DFE), 2008 WL 759357, at *2 (S.D.N.Y. Mar. 21, 2008) (citation omitted)). "Generalized statements regarding the possible existence of discoverable material do not constitute good cause." *Id.* at *3 (citing *Renis v. Thomas*, No. 02 Civ. 9256(DAB)(RLE), 2003 WL 22358799, at **1–2 (S.D.N.Y. Oct. 16, 2003)). Similarly, "[a] court may deny a petitioner's request for discovery 'where the petitioner provides no specific evidence that the requested discovery would support his habeas corpus petition.'" *Ruine v. Walsh*, No. 00 Civ. 3798 (RWS), 2005 WL 1668855, at *6 (S.D.N.Y. July 14, 2005) (quoting *Hirschfeld v. Comm'r of the Div. of Parole*, 215 F.R.D. 464, 465 (S.D.N.Y.2003)). Relatedly, "[w]here the request for discovery is a mere fishing expedition, the court will not grant it." *Corines v. Superintendent, Otisville Corr. Facility*, No. 05-CV-2056 (NGG) (SMG), 2008 WL 4831729, at *2 (E.D.N.Y. Nov. 6, 2008) (citing *Perez v. U.S.*, 378 F. Supp. 2d 150, 157 (E.D.N.Y. 2005)).

### A. Viola Does Not Make a Showing of Good Cause Sufficient to Warrant the Production of Communications From His Prior Attorneys and the Government

None of the allegations Viola raises in his motions are sufficient to entitle him to the sweeping discovery he requests. While specific factual allegations of a conspiracy between the prosecution and defense counsel may well warrant discovery, Viola offers only unsubstantiated speculation of such a conspiracy, based on the facts that his former counsel, Attorney Pickerstein, pled guilty to taking client funds and was once a member of the Connecticut U.S. Attorney's Office. Viola offers no support for his allegations that Pickerstein was involved in the selection of the government attorneys assigned to prosecute his case, or that Pickerstein's presence influenced either the manner in which the Government pursued it or the terms of the plea agreement. Indeed, the Government's pursuit of criminal charges against Pickerstein and Pickerstein's subsequent guilty plea would appear to significantly weaken Viola's theory of collusion between the two. *See U.S. v. Pickerstein*, No. 3:16-cr-00009 (VAB) (D. Conn. filed Jan. 14, 2016) (Dkt. ## 1, 6).[3]

---

[3] Viola unsuccessfully attempts to address this fact by offering the theory that Pickerstein thought Viola "was worth something in trade," and that his conviction constituted "an offering for leniency" by Pickerstein to the Government in response to his own subsequent prosecution. [Dkt. #32, Pl.'s Mot. to Amend at 2]. However, Viola's theory is belied by the sequence of events. Evidence of Pickerstein's thefts was first discovered in November 2013, when a client noticed an accounting discrepancy. *See U.S. v. Pickerstein*, 3:16-cr-00009 (VAB) (D. Conn. filed Jan. 14, 2016) (Dkt. #17 at ¶ 10). Judgment was entered in Viola's criminal case over a year *before*. *See U.S. v. Viola*, No. 3:12-cr-00025 (D. Conn. filed Aug. 11, 2011) (Dkt. #71). Thus, at no time prior to and long after Viola's conviction did Pickerstein have any reason to believe that he would be facing prosecution for his thefts, such that he would have sought to curry favor with the Government at Viola's expense.

5

Viola also fails to offer any evidence to substantiate his claim that Pickerstein's thefts from other clients' accounts had any bearing on his case. While it is possible, Viola offers no evidence to tie any particular act (or failure to act) by Pickerstein to his pilfering of client funds. Instead, he baselessly speculates that Pickerstein thought he "had a lot of money to pay a large fee for his defense" in light of "the amount of money involved in [Viola's] case," and when he discovered the opposite was true, he ceased defending him. [Dkt. #1, Pet'r's Mot. to Vacate at 39]. Viola offers no evidence to support this theory. In addition, his explanation of Pickerstein's thinking does not make sense. There would have been no reason for Pickerstein to conclude that he was wealthy based on the amount of other people's money with which he was entrusted. This is particularly so given Viola's meager income, heavy gambling losses, and spotty employment record, which long predated Pickerstein's involvement in the case. See *U.S. v. Viola*, No. 3:12-cr-00025 (D. Conn. filed Aug. 11, 2011) (Dkt. #57 at ¶¶ 74, 76-77, 80).

These facts also do not resemble those arising in *Bracy v. Gramley*, 520 U.S. 588, 904 (1997), as Viola incorrectly contends. See [Dkt. #32, Pet'r's Am. Mot. at 1-2]. There, the defendant was convicted of murder and sentenced to death by a state court judge who was later convicted on federal charges of accepting bribes from criminal defendants in other cases in which they were charged with murder. The defendant sought to show that the acceptance of bribes in those cases induced a compensatory bias against defendants who did not bribe him to create the appearance that he wasn't "soft" on criminal defendants. *Bracy*, 520 U.S. at 906. Relevant to the Supreme Court's analysis were the facts that the defendant's

attorney was a former associate of and was appointed by the corrupt judge, the attorney announced that he was ready for trial just a few weeks after his appointment, the attorney did not request additional time to prepare penalty-phase evidence in a death penalty case, and at least one of the judge's former law associates had participated in the bribery activity. *Id.* at 907-08. Here, unlike in *Bracy*, Defendant Viola fails to supply a plausible factual nexus between Attorney Pickerstein's criminal conduct and the outcome of his case.[4]

Beyond his unsubstantiated conspiracy theory, Viola sets forth allegations suggesting that Pickerstein was ineffective following his and Attorney Woo's CJA appointment by not aggressively pursuing discovery regarding investor losses, spending less time on his case, and failing to effectively communicate with him. *See* [Dkt. #1, Pet'r's Mot. to Vacate at 39-40]. Additional discovery consisting of his attorneys' communications is not likely to tip the balance in Viola's favor as to these allegations. Indeed, on appeal, Viola "did not object to the district court's loss calculation, the number of victims, or the investment enhancement at sentencing" and he even "submitted a list of victims and loss amounts not materially different from that submitted by the government." *U.S. v. Viola*, 555 F.

---

[4] For the same reasons, Viola's request to serve interrogatories on the Government, against whom he offers absolutely no evidence of misconduct or connection to Pickerstein, aside from having once employed him and much later prosecuting him on an unrelated charge, is DENIED. *See* [Dkt. #32, Pet'r's Am. Mot. at 1-2]. Similarly, his request that the Court issue four subpoenas to him to be sent to unknown individuals seeking unidentified information and/or documents is procedurally improper. *See* [Dkt. #31, Pet'r's Mot. for Subpoena at 1]. In addition to the fact that Viola fails to provide any information regarding the nature, scope, and recipient of his requested subpoenas, Federal Rule of Criminal Procedure 17(c), on which he bases his request, is intended to provide defendants with a method "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *U.S. v. Nixon*, 418 U.S. 683, 698-99 (1974). Here, no criminal trial ever occurred, and the Rule is otherwise inapplicable. Accordingly, Viola's motion for subpoenas is DENIED.

App'x 57, 59 (2d Cir. 2014).  However, he now contends that "new evidence" generated by an accounting firm hired by the bankruptcy trustee in a different matter depicts that more investors made money than lost it, and that Viola, rather than making money, actually lost more than $2.8 million of his own money.  [Dkt. #1, Pet'r's Mot. to Vacate at 43, 46].[5]

   As for Viola's other attorneys, none of the allegations justify discovery, let alone the broad and general request for all communications regarding Viola's case.  First, Viola contends that Attorney Green "should have directed him to invoke his Fifth Amendment right against self-incrimination" when Viola met with the government, and he "assured [Viola] of a reasonable sentence."  [Dkt. #1, Pet'r's Mot. to Vacate at 21, 35].  Viola does not explain how Attorney Green's communications regarding his case have any bearing on these allegations, nor does he demonstrate that such discovery would support his petition.  Similarly, Viola's claims that Attorney Woo screamed at and disrespected him, ignored favorable evidence, and his general, unspecified claims of a conflict of interest, misrepresentations, and lapses in attention to detail do not implicate the communications Viola requests.  [*Id.* at 40-42].[6]  Finally, Viola's general assertion

---

[5] Nothing on the face of the document containing the purported evidence Viola advances indicates that it is a court record, notwithstanding the letters "USBRC" and the words "Dist. of Conn" which appear on the first page, or that it was created by a third party, as Viola represents.  See [Dkt. #1, Ex. A to Pet'r's Mot. to Vacate at 62-67].  Accordingly, the Court cannot comprehend the basis for Viola's motion requesting that *it* provide him with "an updated restitution order and worksheet."  [Dkt. #30, Pet'r's Mot. for Updated Restitution Order at 1].  The motion is therefore DENIED.

[6] Viola also alleges that Attorneys Woo and Pickerstein claimed to have communicated with one another on important case items, and Viola questioned the veracity of these statements given that neither recalled anything about the items in discussions with Viola.  [Dkt. #1, Pet'r's Mot. to Vacate at 42].  While

8

that Green, Pickerstein, and Woo induced him into pleading guilty and cooperating with the Government by misleading him as to the sentence he was likely to receive is far too barebones to warrant discovery. Viola states only that at some point, someone misled him into believing that pleading guilty and cooperating would result in "a zero to two year sentence." [Dkt. #1, Pet'r's Mot. to Vacate at 22]. Viola asserts no facts regarding what was said or done, who misled him, and when it occurred. Indeed, elsewhere, Viola states that his attorneys, Green, Pickerstein, and Woo, and an attorney for the Government, merely "assured [him] of a reasonable sentence." [*Id*. at 21, 48]. Accordingly, Viola's motions for discovery are DENIED.

### B. Viola Fails to Offer Sufficient Facts in Support of His Request for an Order to Show Cause

Viola's request for an order to show cause as to the CJA appointment of Pickerstein similarly fails. While Viola attempts to insinuate that the appointment of Pickerstein as CJA counsel was improper and inconsistent with the Circuit's CJA plan, he distorts the record. Pickerstein was appointed in furtherance of Viola's Sixth Amendment right to counsel of his choice for a limited purpose and duration.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "[A]bsent a knowing and intelligent waiver, no

---

this allegation does relate to the requested communications, even if discovery were to reveal that these statements were false, Viola would be unable to demonstrate prejudice based on such immaterial misrepresentations, and thus, he would be unable to establish an ineffective assistance claim. *See, e.g., Rodriguez v. Bradt*, No. 09 Civ. 10285 (LTS)(DF), 2011 WL 6747470, at *10 (S.D.N.Y. Sept. 14, 2011) (denying ineffective assistance claim based on attorney misrepresentation upon finding that petitioner "cannot demonstrate prejudice").

9

person may be imprisoned for any offense . . . unless he was represented by counsel at his trial." *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972). The Sixth Amendment further requires that a defendant be represented by "competent counsel in all criminal prosecutions." *Lauria v. United States*, Nos. 3:96-cr-185 (PCD), 3:01-cv-1893 (PCD), 3:01-cv-1894 (PCD), 2006 WL 3704282, at *5 (D. Conn. Dec. 13, 2006) (citation omitted). On the other hand, an "indigent defendant has no right to choose his counsel." *Montejo v. Louisiana*, 556 U.S. 778, 784 (2009). Accordingly, the CJA ensures that "defendants who are financially unable to afford trial services necessary to an adequate defense are provided them in accordance with the Sixth Amendment." *United States v. Parker*, 439 F.3d 81, 90 (2d Cir. 2006) (citations and quotation omitted). The CJA commands that "[e]ach United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section." 18 U.S.C. § 3006A(a). The District of Connecticut has established a Criminal Justice Act Plan which governs the appointment of counsel for financially eligible defendants. *See* United States District Court for the District of Connecticut Amended Criminal Justice Act Plan (Jun. 1. 2012), *available at* http://www.ctd.uscourts.gov/sites/default/files/forms/cja_plan_ct.pdf.

Attorney Woo, a colleague of Pickerstein at the time, was appointed as CJA counsel for Viola at the outset of his criminal case. *See U.S. v. Viola*, No. 3:12-cr-00025 (D. Conn. filed Aug. 11, 2011) (Dkt. #22). Months later, Woo petitioned the Court to appoint Pickerstein to serve as co-counsel for Viola's change of plea

10

hearing only. *Id.* (Dkt. ## 27, 41). Viola was present and raised no objection. The Court's appointment of a particular attorney as CJA co-counsel, in this case, Pickerstein, is permissible under the CJA plan. *See* United States District Court for the District of Connecticut Amended Criminal Justice Act Plan at XIV. A. (Jun. 1. 2012) ("Ordinarily, assignments are to be made on a randomized and rotational basis, *except* under exceptional circumstances or *where a judicial officer directs otherwise.*") (emphasis added). Moreover, the attorney may be appointed even if the defendant previously retained him as counsel. *See id.* at XI. C. ("Where a person has been represented by counsel before his or her initial presentment before a judicial officer . . . counsel may apply to the judicial officer for approval of a retroactive appointment."); *see also U.S. v. Guastaferro*, No. 09-cr-00347 (S)(M), 2010 WL 742135, at *1 (W.D.N.Y. Mar. 1, 2010) (noting that the court appointed as CJA counsel the attorney who had initially accompanied the defendant to a hearing, upon qualifying the defendant for appointment of counsel and where defendant was no longer able to compensate the attorney).[7] It is also

---

[7] The two cases Viola cites in his motion do not indicate that the CJA appointments in his criminal case were made in error, nor are they apposite. *See* [Dkt. #19, Pet'r's Mot. for Order to Show Cause at 1]. In *United States v. Parker*, 469 F.3d 57, 61 (2d Cir. 2006), the Second Circuit affirmed the district court's appointment of CJA counsel and otherwise denied the motion made by the defendant's previously appointed counsel to represent the defendant on appeal. The language Viola paraphrases from this case derives from the Circuit's Amended Plan to Implement the Criminal Justice Act of 1964, which concerns "furnishing representation *in the Court of Appeals* for eligible persons." United States Court of Appeals for the Second Circuit, Amended Plan to Implement the Criminal Justice Act of 1964 § 1 (Jun. 18, 2010) (emphasis added). *Asan v. United States*, 907 F. Supp. 2d 426 (S.D.N.Y. 2012) concerned a *writ of error coram nobis* filed by a petitioner who had pled guilty to a crime, was subsequently deported, and who claimed that his defense counsel failed to inform him of the risk of deportation. The only possible relevance this case could have is its discussion of the appointment process of the defendant's CJA counsel. *Id.* at 431. While that particular attorney happened to be on call for a

11

worthy of note that the Court denied defense counsel's subsequent motion for co-counsel, which sought to appoint Pickerstein as co-counsel due to the complexity of the case. *U.S. v. Viola*, No. 3:12-cr-00025 (D. Conn. filed Aug. 11, 2011) (Dkt. ## 39, 41). Viola's motion does not challenge the initial CJA appointment of Attorney Woo, nor does it disclose the facts and circumstances of Pickerstein's prior retained representation of Viola and his subsequent appointed representation. Accordingly, the motion is DENIED.

III. Conclusion

For the foregoing reasons, Petitioner's discovery motions and motion for an Order to Show Cause are DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: April 26, 2016

---

CJA assignment, and as a result, he was selected to represent the defendant, neither *Parker* nor *Asan* requires a court to randomly select an attorney.